M. D. Barker et al., Appellees, v. Vance Barker, Trading as Barker Freight Lines, Appellant.

Gen. No. 9,699.

Opinion filed November 2, 1950. Released for publication November 28, 1950.

RICHARD W. VELDE and JOHN L. KNUPPEL, both of Havana, for appellant.

STEVENS & HERNDON and W. KNOWLES LAIRD, both of Springfield, for appellees.

MR. JUSTICE DADY delivered the opinion of the court.

This case is before us on appeal by defendant from a judgment of the circuit court in favor of plaintiffs for $1,548.53. The case was tried before the trial court without a jury.

At all times in question plaintiffs were engaged in the business of selling at retail in Springfield, Illinois, refrigerators and other appliances.

Defendant was engaged in the trucking business for hire and had a certificate from the Illinois Commerce Commission permitting him to handle freight from any point within a radius of 50 miles from the center of Havana, Illinois, to any point in Illinois, and to haul freight from any point in Illinois to a point within a 50 mile radius of Havana.

In March 1947, plaintiffs purchased four truck loads of refrigerators and other appliances from the Westinghouse Electric Corporation. Plaintiffs engaged the defendant to haul three of such truck loads from the Westinghouse plant at Mansfield, Ohio, to plaintiffs' place of business in Springfield, Illinois. During the morning of March 17, 1947, 35 of such refrigerators were loaded at such plant into three of defendant's trucks, which he had sent to Mansfield to haul such freight. On the trip to Springfield one of defendant's trucks, so loaded, driven by defendant's agent Earl Barker, turned over on its left hand side near Delphi, Indiana, while traveling around a righthand curve on a flat stretch of paved road. After the truck turned over a wrecking truck with a winch was called by police, and a chain was then thrown around defendant's truck and it was pulled back on its wheels. After the accident, the truck, without the refrigerators having

47

been unloaded or reloaded, was driven by Earl Barker to Springfield, and the truck load of refrigerators was then delivered to plaintiffs' place of business. When the truck reached Springfield its top was in a damaged condition, and many of the refrigerators were found to be damaged. One refrigerator was missing and never delivered to plaintiffs.

On the trial it was stipulated that the damage to the refrigerators was $1,390.67 and that the value of the missing refrigerator was $157.86.

The first two counts of the complaint charged that the defendant, as a common carrier, was liable for such damages. Count three charged that because of the negligence of the defendant one of the refrigerators was lost. Count four charged that the defendant was liable for damages for carelessly and negligently carrying and caring for the 35 refrigerators that were damaged.

Defendant's answer categorically denied "all allegations of the complaint."

No representative of plaintiffs was present during the trip made by Earl Barker from Mansfield to Springfield.

R. R. Shultz, manager of the appliance department of plaintiffs, testified that he was present when Earl Barker delivered the refrigerators to plaintiffs, and that some of the refrigerator doors were then found to be caved in and some of the refrigerator handles had been sheered off. Shultz testified that at that time Earl Barker told him that "while coming down a hill around a curve and the roads were sloping, the back wheel of the trailer locked and the trailer just eased over in a ditch beside the road," and that "that wasn't the first time that brake had locked."

Earl Barker, the only witness for defendant, testified that at the time of the accident he was making a right turn on the inside of a curve and the tractor

and trailer turned over to its left, that it all happened fast, that "he would be safe in saying" the brakes did not lock, that he applied no brakes and that he was driving "not less than twenty miles an hour and not faster than thirty," and he never made a statement to Shultz that the brakes locked.

█ Defendant contends that "counts 1 and 2 . . . should have been stricken on motion of defendant,— defendant not being a common carrier." The motion, which was in writing, did not state that the evidence did not tend to show defendant was acting as a common carrier but stated that the reason for the motion was that plaintiffs failed to establish by a preponderance of the evidence that defendant herein is a common carrier. Such motion was made at the conclusion of the evidence offered by plaintiff. After the ruling on such motion defendant introduced evidence, and no such motion was made at the conclusion of all of the evidence. It is our opinion that the trial court did not err in denying such motion so made.

█ Defendant contends it was error to admit in evidence plaintiff's Exhibit 4. Paul Maurer, an accountant, who was a witness for plaintiffs, was shown Exhibit 4 and stated that it was a copy of a letter on the letter head of the defendant which had been received by him. He did not state how the same was received, whether by mail or otherwise. The letter bore the signature "Vance Barker." Maurer testified that he did not know the signature of defendant and no proof was made of such signature. The letter read: "Enclosing check for $797.92 from the Great American Insurance Co. to apply on the claim you filed sometime ago. As yet I have never received a copy of the claim and I must have it before I can pay my share. So, would you please send me a copy of the claim and a statement showing the balance due less freight charges on one load of merchandise. I must have these for my

files." It is our opinion that the letter was improperly admitted in evidence, but we do not consider that there was any material error in its admission.

■ Defendant contends that all of the testimony with reference to the loading of the trucks shows such loading was done by employees of "the shipper" and that therefore defendant is absolved "from any loss occasioned by the defects in loading." It is our opinion that the trial judge was justified in believing, and in effect finding, that the proof did not show any improper loading. Moreover the proofs do not show that the loading was done by or in the presence of any employee of plaintiffs, or in pursuance of any directions of plaintiffs. The only proof on that subject was that of Earl Barker who testified that at the time of the loading the Westinghouse employees told the truck drivers they could get the trucks loaded quicker "if we would step out of the way," that he saw the trucks being loaded, and the Westinghouse men then told the truck drivers that the trucks were loaded and opened the door to let the drivers drive out. The proofs in our opinion do not show or tend to show that the plaintiffs authorized the Westinghouse employees to make any such statement to the truck drivers.

Defendant next contends there isn't a syllable of proof in the record to indicate that the defendant or his agents were negligent in the handling of the merchandise of the plaintiff. We consider it sufficient to hold that in our opinion there is no merit to such contention.

The next and last contention of defendant is that the plaintiffs failed to allege and prove that the refrigerators were received by defendant in good condition. The record shows without question that the refrigerators were loaded in defendant's trucks early in the morning of March 17. George H. Percy testified

50

that on March 17 he was foreman of the shipping department of the Westinghouse company, that he was present when the 35 refrigerators were shipped from the plant, and that it was the custom of his company that if there was any damage before a refrigerator was loaded it was sent to the service department for repairs. Paul Rorick testified that he was the inspector for such company on March 17 and worked that day on the first shift, that his duties were to check the refrigerators and the packing and crating, that he inspected all of the refrigerators that came off the assembly line of his company on such first shift on that day, that if a refrigerator happened to be defective a red tag was placed on the refrigerator, and that all of the refrigerators which passed on such shift on that day were without any defects or imperfections in so far as the refrigerators and packing and crating was concerned. There was no testimony to the contrary. It is our opinion that this last contention of the defendant is also without merit.

The judgment of the trial court is affirmed.

*Affirmed.*